**STATE of Maine**

**v.**

**Adelbert R. GRONDIN.**

Supreme Judicial Court of Maine.

Dec. 21, 1971.

Foahd J. Saliem, County Atty., Augusta, for plaintiff.

Norman C. Bourget, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

On December 4, 1969 the defendant, then indigent and represented by court appointed counsel, was permitted to plead guilty to an information charging larceny of a motor vehicle. He was subsequently sentenced therefor. Thereafter, on May 13, 1970 while in custody pursuant to said sentence, the defendant filed *pro se* a motion for leave to withdraw his plea of guilty pursuant to M.R.Crim.P., Rule 32(d). The motion recited as the reason for the relief requested the following: "The respondent's plea was entered through ignorance and inadvertence and without full understanding of the nature of the charge against him and thus its acceptance constituted manifest injustice." The defendant attached thereto a "Memorandum of Law in Support of Motion" which is made a part of the record. The motion by its terms and as interpreted by the "Memorandum" is addressed exclusively to an alleged non-compliance with M.R.Crim.P., Rule 11. The motion does not assert the innocence of the defendant. The Justice below by findings and order denying the motion concluded that, taking into account the record of the Rule 11 proceedings and the absence of any assertion of innocence, there was no adequate showing of "manifest injustice" within the meaning of Rule 32(d). From that denial of relief, the defendant, aided by court appointed counsel, has appealed.

M.R.Crim.P., Rule 32(d) on the date this motion was filed was the same as its federal counterpart [Fed.R.Crim.P., Rule 32(d)] and provided:

"(d) Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." [1]

▮▮ Since we have had no prior occasion to interpret Rule 32(d) and especially the words "to correct manifest injustice," we look first to those federal cases which have examined the language of their identical rule. The granting of the motion

---

1. On March 1, 1971 we promulgated a change in Rule 32(d) deleting the words, "but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." The sole remedy after sentence is now by petition for statutory post-conviction relief.

rests in the sound discretion of the court. Failure to assert innocence in support of the motion although not conclusive is a factor which may properly be considered. Delay in filing such a motion is also a proper factor for consideration since one should not be permitted to await the outcome of sentence and then change his plea merely because he is dissatisfied. Zaffarano v. United States (1964) 9 Cir., 330 F.2d 114; Kadwell v. United States (1963) 9 Cir., 315 F.2d 667; United States v. Hughes (1964) 2 Cir., 325 F.2d 789. It was held in United States v. Tivis (1969) D.C.Tex., 302 F.Supp. 581 (aff. United States v. Tivis [1970] 5 Cir., 421 F.2d 147) that the movant must allege sufficient facts in support of his motion "to raise a question as to whether or not manifest injustice will result from a denial of his motion." That Court further concluded that no plenary hearing need be afforded on a 32(d) motion "if the record conclusively demonstrates that the petitioner is not entitled to relief."

▮ We are satisfied that these conclusions reached by federal courts are soundly based and are therefore disposed to adopt them as we interpret the requirements of M.R.Crim.P., Rule 32(d) prior to its recent amendment. The Justice below had before him the record of the proceedings culminating in the acceptance of the guilty plea and decided the issue presented by the motion on that record. We therefore turn to that record to ascertain whether or not the plea was "entered through ignorance and inadvertence and without full understanding of the nature of the charge against him" under such circumstances as to constitute "manifest injustice."

The record discloses that a car was stolen in Connecticut and driven by the defendant and his two companions Younie and Capitan as part of a "joint enterprise" to Maine where they were apprehended. All three elected to proceed by information and the Court in the Rule 11 proceeding dealt with the three defendants together. The Court proceeded by addressing the defendants personally and eliciting answers from each defendant to his many searching questions. In the course of this interrogation consuming more than twenty pages of record the Court carefully explained the nature and meaning of the charge, the application of the doctrine of "continuous larceny" and the possible consequences of a guilty plea including an exposition of all the rights thereby waived. In each instance he elicited a response from each defendant indicating an understanding of the charge and the rights involved, an absence of any pressure or inducement to plead guilty, and a continuing desire to tender such a plea. In the case of defendant Grondin, his explanation for pleading guilty to an information was that "we wanted to get our time over" and that "I feel I am guilty." To establish a factual basis for the charge the Court ascertained by affirmative response of the defendants that they drove the stolen car from Connecticut to Maine, that they were "all in it together" and that the facts were not such "that any of you would feel less guilty than any of the others." The Court then offered this admonition, "This Court does not want a plea of guilty from you in any event unless in truth and in fact you are guilty of the offense, that each and every element of that offense, as I have outlined it to you, has been committed, and that you are the ones who committed it." The Court then recited in detail his understanding of the facts as they existed with particular reference to the knowledge of theft and joint participation which the State would have to prove beyond a reasonable doubt upon a trial. As his inquiry was couched, the Court could fairly conclude from the affirmative response of the defendants that they acknowledged the truth of these facts. The Court then required the County Attorney to state facts with respect to the ownership of the car, its theft in Connecticut, the apprehension of the defendants in possession of the car in Maine, its value and the attempted flight of the defendants to avoid arrest. At the close of this statement the Court made this inquiry

of the defendants, "Is there any doubt or any misstatement of facts made by the County Attorney in any of the recitals given to the Court?" The defendants all responded in the negative. We conclude that the Rule 11 record effectively negates the claim of the appellant that his plea was not voluntarily and understandingly tendered.

■ The defendant contends that it was error for the Court to explain the nature of the charge in terms of the doctrine of "continuous larceny" since no such doctrine exists under Maine law. The co-defendant Younie in a post-conviction relief proceeding raised this precise issue and in our recent decision of Walter A. Younie v. State of Maine (Me.—1971) 281 A.2d 446, (Opinion September 24, 1971) we reaffirmed the existence of the "continuous larceny principle" in Maine and emphasized the sound public policy considerations which underlie and indeed necessitate the doctrine. The contention of the defendant here is foreclosed by *Younie.*

■ The defendant also claims to have been misled by a statement of the Justice made in the course of his explanation of the doctrine of "continuous larceny." He said, "Now, when you take it, it is a larceny wherever you go with it. You can be prosecuted for it in every jurisdiction through which you pass until some jurisdiction catches you and prosecutes you for it." In *Younie* an attempt was made to raise the same issue but we there declined to consider the point, it having been raised for the first time on appeal. At the outset it should be noted that the Rule 11 requirement that the Court must determine that the defendant is making the plea with understanding of the nature of the charge does not include an obligation to inform the defendant of *purely collateral consequences* of conviction. United States v. Washington (1965) 3 Cir., 341 F.2d 277; United States v. Cariola (1963) 3 Cir., 323 F.2d 180, 186. The *Cariola* Court stated in part:

"To hold that no valid sentence of conviction can be entered under a plea of guilty unless the defendant is first apprised of all collateral legal consequences of the conviction would result in a mass exodus from the federal penitentiaries. The collateral effect of a federal conviction varies, depending upon the offense, and whether state or federal law is involved. State laws are far from uniform."

It would follow that the Court has no obligation to discuss the law of other jurisdictions and the right of such jurisdictions to prosecute the accused for any offense there committed, even though factually related to the same transaction. In the instant case the quoted statement cannot fairly be read out of context, that context being merely an explanation of the "continuous larceny" principle. Moreover, the words used, emphasizing as they did the fact that a larceny is committed "wherever you go with it" cannot fairly be tortured into an assurance that under the laws of other jurisdictions defendant could never again be prosecuted for a larceny committed therein. We deem defendant's contention to be devoid of substance or merit.

■ Lastly, the defendant asserts that a self-serving statement made by him in the course of subsequent *sentencing* proceedings should somehow have the effect of invalidating his plea tendered in the course of the prior Rule 11 proceedings. During a colloquy with the Court just prior to sentence, the defendant stated, "I asked Mr. Younie the first time I got in the car if it was stolen because a couple times he had got arrested for stealing a car, and he said no." It should be noted that this statement was made on January 2, 1970 whereas the Rule 11 proceedings culminating in the acceptance of defendant's plea were completed on December 4, 1969. Rule 11 relates *only* to the acceptance of a plea and requisite compliance with the rule is not affected by matters which arise at a separate and subsequent sentence proceeding. The defendant made no motion under Rule

32(d) *prior to sentence* as he might have done if he genuinely believed he had caused the Court to misunderstand the facts. Moreover, the Court could properly disbelieve the quoted statement since it stood in flat contradiction to the responses of the defendant in the Rule 11 proceedings. The defendant, although afforded numerous opportunities, had not seen fit to make such a statement in the course of the Rule 11 proceedings. The Court could properly conclude that the statement was made in the hope that it might affect the Justice's view of proper sentence. The appellant's contention is without merit.

We conclude that there was no abuse of the discretion of the Justice below in denying the 32(d) motion.

Appeal denied.

All Justices concurring.