**Russell A. CLEWLEY**

**v.**

**STATE of Maine.**

Supreme Judicial Court of Maine.

March 13, 1972.

James MacMichael, Skowhegan, for plaintiff.

Clayton N. Howard, Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

Like many guilty pleaders recently Russell Clewley has had second thoughts about the voluntariness of his plea. This, despite the fact that when he appeared before the Presiding Justice with a petition to waive indictment and to proceed by information and waive appointment of an attorney to represent him, he said, in response to the question "Can you tell me why?" (he wished to waive counsel):

"Well, we figured that we are guilty and we might as well take whatever punishment the Court does hand out. We was caught with the car, so why waste the taxpayers' money of this state or any state by going through a great big Court procedure. We might as well beg mercy to the Court and try to get it over with."

The petitioner was charged with larceny of an automobile having a value in excess of $100.

He was convicted by his plea of guilty.

A sentence of not less than 2½ nor more than 5 years terminated the information proceeding.

His commitment to the Maine State Prison in execution of the sentence immediately followed its imposition.

After his commitment he filed a petition for writ of habeas corpus (post-conviction). In this proceeding he did request appointment of counsel which request was granted.

The original petition alleged:

(a) the guilty plea was not knowingly and voluntarily entered;

(b) the acts admitted by the petitioner did not constitute the crime charged;

(c) the plea was entered in the belief that the petitioner could not thereafter be tried for the theft of said motor vehicle in the State of Massachusetts;

(d) petitioner entered his plea believing that having been in the vehicle even without knowing it was stolen was a crime, specifically the crime of larceny;

(e) the information charging the petitioner with larceny was invalid because he is not protected from future trial and punishment for the same acts.

Thereafter the petition was amended to include the additional allegation that there was a violation of the Maine Rules of Criminal Procedure, Rule 11, in that the Court did not properly,

(1) make such inquiry as might satisfy it that the defendant in fact committed the charge, and

(2) address the defendant personally and determine that the plea was made voluntarily with understanding of the nature of the charge.

The amendment also included an allegation that the guilty plea was improperly induced by both promise of reward and threats made by a member of the Maine State Police Department.

After the State had filed its answer to the petition, a pretrial conference was held before a single Justice of the Superior Court at which time it was stipulated that the following issues were presented for determination by the Court:

"(1) Whether or not the plea of guilty to the information in the original proceedings in the Superior Court was voluntary and understandingly tendered and whether or not there was an invalidating non-compliance with the requirements of M.R.Crim. P., Rule 11.

(2) Whether or not the plea of guilty so tendered was the product of threats and inducements on the part of State Trooper Morin.

(3) Whether or not the plea of guilty was invalidated by lack of knowledge and understanding on the part of the petitioner with respect to the legal concept of continuous larceny."

After hearing the Justice before whom the petition was heard made finding, the material part of which is as follows:

"There is in evidence a transcript of the information proceedings which reveals that the Presiding Justice exercised great care and caution in accepting the plea of Petitioner. I find that Petitioner's plea was voluntarily and understandingly tendered and there was no violation of due process of law. Holbrook v. State (1965) 161 Me. 102, 208 A.2d 313; Joy v. State (1967), Me., 230 A.2d 231; Raymond v. State (1969), Me., 251 A.2d 509."

This appeal followed.

We must sustain the appeal.

M.R.Crim.P., Rule 11, has been the subject of considerable litigation during the past few years. Morgan v. State, Me., 287 A.2d 592 (1972); Cote v. State, Me., 286 A.2d 868 (1972); Grass v. State, Me., 263

A.2d 63 (1970); Child v. State, Me., 253 A.2d 691 (1969); *See*, State v. Grondin, Me., 284 A.2d 677 (1971); Gamblin v. State, Me., 281 A.2d 229 (1971); Ellis v. State, Me., 277 A.2d 120 (1971); Northrup v. State, Me., 272 A.2d 747 (1971); Wilson v. State, Me., 268 A.2d 484 (1970); Hutchins v. State, Me., 265 A.2d 706 (1970); State v. Fernald, Me., 248 A.2d 754 (1968); *cf. e. g.,* Gordon v. State, Me., 232 A.2d 527 (1967); Eaton v. State, Me., 232 A.2d 530 (1967).

■ Since *Morgan,* supra, it is clear that the Presiding Justice who is tendered a plea of guilty must:

   (a) make such inquiry as may satisfy him that there is factual basis for the plea; [1]

   (b) address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge;

   (c) cause a record to be made at the time the Rule 11 proceedings are held which clearly demonstrates compliance with the Rule;

   (d) he *may* when possible but is not required to address the defendant and thus satisfy himself from the defendant's own statements, given in open court and on the record that he, in fact, committed the crime charged.

■ *Morgan* further makes clear that while the State policy is that the record made in the Rule 11 proceedings should be sufficiently complete to demonstrate full compliance with the rule, such policy is not constitutionally mandated.

■ The Maine Rule is that since we make provision for post-conviction habeas corpus proceedings, a default in making a record in the Rule 11 proceeding clearly establishing compliance with the Rule is not fatal. Such compliance may be demonstrated on the record in a post-conviction habeas corpus proceeding. In such case, however, the burden of proof as to such compliance is on the State.

■ In order to ascertain that a guilty plea is voluntary and entered with understanding of the nature of the charge, it is necessary that the Presiding Justice ascertain that the defendant understands the charge. If the Presiding Justice undertakes to explain the nature of the charge, it is minimally required that the explanation given be correct and not misleading. It is not necessary that the defendant be apprised of all collateral legal consequences of the conviction. State v. Grondin, Me., 284 A.2d 677 (1971).

Applying these standards to the case at hand, we find the following:

This defendant and three others appeared before the Trial Court, requesting that they be allowed to waive indictment and proceed by information proceedings as permitted by 15 M.R.S.A. 701 and M.R.Crim.P., Rule 7(b).

All expressly waived appointment of counsel.

The Presiding Justice exercised commendable care in pointing out to all the defendants that it was advisable to have counsel, even if the plea was to be guilty.

Having ascertained as he did that a waiver of counsel was understandingly and knowingly made and deliberately calculated,

1. In *Morgan* we said: "Hence, the trial judge may make the appropriate inquiry within the meaning of Rule 11, M.R.Crim. P., by making on the record inquiries (which need not involve sworn testimony) of the prosecutor or of other persons whom the prosecutor presents as having relevant and material information, or by examining and placing upon the record any documents which are made available and which contain adequate factual information relating to whether defendant in fact committed the crime charged, or the judge may (but need not) inquire on the record of the defendant himself."

he proceeded with the execution of waivers in open court. He informed all defendants collectively that each was charged by information:

" . . . on or about the 16th day, of May, 1969, in the Town of St. Albans in this County and this State of Maine, that you with intent to permanently deprive the owners of their property, one 1965 hard top Pontiac motor number 252375 E 119588, Massachusetts registration number E 22284, of the value of $1500, of the property of Judith A. and Frederick A. Young, feloniously, did steal, take and carry away."

The Presiding Justice continued,

"It has been represented to the Court that you 4 were all together in this automobile, all making use of it and were all apprehended in actual or constructive possession of it. As I have explained to you before, larceny of property in excess of $100 is grand larceny under the law of this State requiring a sentence on the part of the Court of not exceeding 5 years in the penitentiary."

He then specifically inquired and satisfied himself that no promises or threats or compulsion of any description had been used upon any of the defendants.

Arraignment of each of the defendants separately was then had. This petitioner's plea was guilty.

The County Attorney was then called upon to make a "statement of merit as to this case against these 4 defendants."

The County Attorney then said:

"May it please the Court, the State contends and does say, aver, that it can beyond a reasonable doubt prove against each and every one of these defendants in Criminal Docket Numbers 1472, 1473, 1474, and 1475 that the crime of larceny of an automobile did take place on or about the 16th day of May, 1969, in the town of St. Albans in the County of Somerset and State of Maine. This larceny or a larceny of the automobile in question did take place originally in the City of Boston and Commonwealth of Massachusetts. That these 4 defendants did drive that car from Boston to and into the State of Maine and into the Town of St. Albans. That upon arrival in St. Albans this car being under their control and in their possession, did secret this car for a certain length of time. That on or about the 16th day of May, as a result of a complaint, certain State Troopers, namely, Troopers Hartley and Edward Morin and one other trooper were called and dispatched to St. Albans, and as a result of this complaint, each and all of the 4 defendants were seen in the automobile and did have it then and there under their control, said automobile being of the value of $1500 and the property of Judith A. Young and Frederick Young, said car bearing motor number 252375 E 119588, bearing Massachusetts registration number E22284."

The County Attorney then made this further statement:

"I did, I think, in behalf of the State neglected to state, your Honor, for the record that this larceny is such that it is a continuing crime.

THE COURT: Yes.

COUNTY ATTORNEY: And that is any place the defendants are found in possession of this property even though originally taken in Massachusetts, it being of a continuing nature constitutes the crime of larceny at the place in which they were found with it in their possession."

Immediately prior to permitting the execution of a waiver of Grand Jury consideration of the charges against the defendant, the Court explained the law in these terms:

"Now this is, of course, a felony, the larceny of an automobile. You were, according to the State's contention, caught in possession of the automobile and the possession of stolen goods is prima facie

evidence of larceny. In other words, it falls upon you to explain how you acquired this possession, because it's presumptive evidence of larceny of [sic] this State. So, practically speaking, what the State would have to prove and all that it would have to prove is that the Pontiac was in fact stolen from the true and lawful owners, and that you, the 4 of you, were found in possession of it, which would raise a prima facie case against you and would require you to explain how you acquired this possession legally and defensively. This will be the nature of the prosecution and the nature of course of your defense tactics, and if you saw fit to interpose so, you understand these things now?"

Neither then nor at any time prior to the imposition of the sentence was any information elicited from any of the defendants, or from any other source indicating that the defendant had participated in the taking of the automobile in Massachusetts. No factual basis for the confession made by the entry of a guilty plea that *he* had taken the automobile with larcenous intent in Massachusetts was elicited from the defendant or from any other source unless such could be inferred from the fact that the defendant was found in "recent and exclusive possession" of the stolen vehicle in Maine.

In State v. Poulin, Me., 277 A.2d 493 (1971), we said it was proper for juries to be told that:

"  .  .  .  as factfinders they have a right to draw reasonable inferences from facts proven beyond a reasonable doubt, that they have a right *to infer as a fact* a person having recent and exclusive possession of stolen goods is the thief unless upon all the evidence appearing in the case there arises a reasonable doubt as to the validity of the inference.

"In other words, they may convict in reliance on the inference of fact arising from recent and exclusive possession of stolen goods *alone*, if as factfinders, they

conclude on all the evidence such inference is valid, and *if the inference convinces them of guilt beyond a reasonable doubt and not otherwise.*"

Cannot then a Presiding Justice in a Rule 11 proceeding use inference to be drawn from established facts in the same way a jury is permitted to do to reach the conclusion that the defendant, in fact, committed the crime charged?

We said in *Morgan*:

"Our point, however, is that when a defendant is consenting to the imposition of criminal penalty without a trial—(as distinguished from the situation in which he is demanding a trial)—our main objective is to provide a record which shows that it is *not unreasonable* to conclude that the defendant is *in fact guilty* as charged—(as distinguished from a record, in the situation in which trial is demanded, which proves that it *is unreasonable* to conclude that the defendant is *in fact innocent* of the charge).

"We decide, therefore, that the facet of Rule 11 M.R.Crim.P. now under study signifies that the trial judge is instructed to conduct an 'inquiry' and thereby *to make a record*, using such sources as he deems appropriate, which justifies a *reasonable conclusion* that the defendant in fact committed the crime charged."

Since the jury, to be justified in convicting, must be satisfied it is unreasonable to conclude the defendant is innocent and since the Presiding Justice, taking a guilty plea, must be satisfied only that it is not unreasonable to conclude that the defendant is, in fact, guilty, it necessarily follows that the Presiding Justice ought be permitted to base his conclusion on the same kind of evidence that permits a jury to conclude guilt beyond a reasonable doubt.

We declare that ordinarily it is enough to validate the Rule 11 proceedings, if there is sufficient in the record to justify a reasonable conclusion that the defendant is guilty as charged, which conclusion may

be based upon inferences drawn from established facts, i. e., in this case, the inference of fact drawn from recent and exclusive possession of the stolen vehicle.

The real issue in this case is not whether there was sufficient in the record to justify the Presiding Justice in arriving at the conclusion there was sufficient factual basis for the guilty plea, but rather, in all the circumstances, was the Presiding Justice justified in concluding that the defendant understood the nature of the crime and thus his plea was, therefore, understandingly and knowingly entered.

The Presiding Justice seems to have proceeded on the assumption that operation of the motor vehicle in Maine, knowing that it had been stolen by someone in Massachusetts, constitutes larceny in Maine regardless of the circumstances under which the defendant came into its possession.

■ The Maine Rule, declared first in State v. Underwood, 49 Me. 181 (1858) and reaffirmed in Younie v. State, Me., 281 A. 2d 446 (1971), is that:

"One who commits larceny of property in another State and who with continuing larcenous intent carries the property into, and retains possession of it in, Maine perpetrates a taking and asportation with larcenous intent in Maine, thereby committing the crime of larceny (under Maine Law) in Maine."

■ It is obvious from this that under the continuing larceny rule in order to constitute larceny in Maine there had to be an unlawful taking by the defendant or in such circumstances as to make him legally responsible for the taking in Massachusetts.

If the defendant took possession of the vehicle without larcenous intent in Massachusetts, he could not be guilty of larceny in Maine even if subsequently to innocently acquiring possession of it he learned of the fact of it having been stolen and then formed intent to deprive the owner permanently. State v. Boisvert, Me., 236 A.2d 419 (1967).

■ In In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the United States Supreme Court made it abundantly clear the burden is always upon the State to establish every fact necessary to constitute the crime with which a defendant is charged.

In saying

"So practically speaking what the State would have to prove *and all it would have to prove is that the Pontiac was, in fact, stolen from the true and lawful owners and that you, the 4 of you, were found in possession of it,* which would raise a prima facie case against you and would require you to explain how you acquired this possession legally and defensively." (Emphasis supplied)

the Presiding Justice incorrectly stated the law.

It is not unreasonable for the defendant to have concluded from this statement, as he says he did, that he was guilty of larceny in Maine, if the State established that the automobile was stolen in Massachusetts and that he was found in possession of it in Maine.

■ In view of the fact that he was dealing with the highly technical concept of "continuing larceny," the Presiding Justice was required to ascertain that the defendant was aware what underlying facts were necessary to support application of the rule. Otherwise he could not determine that the plea was offered "voluntarily with understanding of the nature of the charge."

The facts in this case are different from the facts described in State v. Grondin, Me., 284 A.2d 677 (1971).

In *Grondin,* supra, which also involved the concept of continuing larceny of a

motor vehicle stolen in Connecticut, the Court ascertained that the then defendant was a participant in the larcenous taking of the vehicle in Connecticut.

In the post-conviction habeas corpus proceedings before the single Justice this colloquy took place between the attorney for the State and the defendant:

"Q And you knew the car was stolen and you were willing to take your medicine, so to speak?

A Well, after I found out the car was stolen, yes, sir, I knew the car was stolen. I didn't find out until after the officer had already stopped us in Wells that the car was stolen.

Q Yet you did not explain this to the Judge at that time?

A No sir.

Q Why?

A He asked me if I knew the car was stolen or not, and I said yes, I did know it.

BY THE COURT (Single Justice presiding at habeas corpus proceeding):

Q And we would have to say, wouldn't we, Mr. Clewley, in all fairness and candor that from Wells to St. Albans you were knowingly driving a stolen car, right?

A About an hour after we were stopped, yes. Yes, sir, I did.

Q Well then it wouldn't be all the way from Wells to St. Albans.

A Yes.

Q But from somewhere between Wells and St. Albans you knew you were driving a stolen car?

A Yes, sir, I did." [2]

Neither in the record of the information proceeding nor in the record of the post-conviction habeas corpus proceeding is there evidence that any information was obtained from any source as to larceny in Maine or that the defendant had any participation in the larceny in Massachusetts. On the contrary there is express denial by the petitioner that he participated in the larceny in Massachusetts or was even aware of the fact that the car had been stolen by the person from whom he acquired possession until he had driven "about an hour after we were stopped" (in Wells, Maine).

It is clear to us from the record of the Rule 11 proceedings that at the time the guilty plea was tendered before the Justice in the trial court there was lack of compliance with the requirement of Rule 11, M.R.Crim.P. The State has not sustained its burden of establishing in the post-conviction habeas corpus proceeding that the plea of guilty was entered with understanding of the nature of the charge.

In view of the disposition we make of the case, it is unnecessary to discuss the other issues raised.

The entry must be,

Appeal sustained. Conviction and sentence set aside. Case remanded to the Superior Court that the defendant be afforded opportunity to plead anew.

All Justices concurring.

WEBBER, J., did not sit.

2. This colloquy does not appear in the record of the plea-taking proceeding or the information proceeding.